UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **VANESTA MCINTOSH,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-03237-SNLJ |
| | ) |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Vanessa McIntosh's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. McIntosh now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

**I.     Procedural History**

McIntosh's application was denied at the initial determination level.  She then appeared before an Administrative Law Judge ("ALJ").  The ALJ found McIntosh is not disabled because her symptoms were not supported by the medical evidence available. McIntosh then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration, which was denied.  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.  McIntosh now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

1

## II.  Disability Determination—The Five-Step Framework

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 404.1520(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

2

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). An RFC is "defined as what the claimant can still do despite his or her physical or mental limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R.

3

§ 404.1545(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

### III. The ALJ's Decision

At Step One, the ALJ found McIntosh met the insured status requirements through December 31, 2018, and had not engaged in substantial gainful activity since November 5, 2015. (Tr. 17). At Step Two, the ALJ found McIntosh suffers from five medically determinable impairments: (1) polycystic kidney; (2) obesity; (3) irritable bowel syndrome; (4) anxiety; and (5) bipolar affective disorder II. (Tr. 18). At Step Three, the ALJ concluded McIntosh does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 18-20).

Next, in beginning the analysis of Step Four, the ALJ determined McIntosh's RFC.[1]  The ALJ found McIntosh could perform a range of sedentary work as follows

> [she] can lift up 10 pounds occasionally. She can stand/walk for about 2 hours and sit for up to six hours in an eight-hour workday, with normal breaks. She can occasionally balance, stop and crouch, but never kneel and crawl. She should avoid moderate exposure to operational control of moving machinery. She should avoid exposure to unprotected heights and hazardous machinery. Her work is limited to simple, routine, and repetitive tasks. Her work should be in a low-stress job, defined as having only occasional changes in the work setting. She should have no interactions with the public. She should have only occasional interactions with co-workers and supervisors.

(Tr. 20).  As part of this determination, the ALJ found McIntosh's allegations about her physical and mental symptoms' intensity, persistence, and limiting effects were not consistent with the medical records when considered as a whole. (Tr. 23). The ALJ chronicled McIntosh's medical conditions but noted that none "had the significant symptom set that commonly cause[s] disability." (Tr. 21). In specific, the medical source statement ("MSS") opinions of Dr. Anjani Urban, a treating physician, were given "significant weight" in their conclusion that McIntosh was physically capable of lifting, twisting, scooping, balancing, crouching, crawling, and climbing. (Tr. 21, 507). In fact, the RFC largely mimics Urban's conclusions as to McIntosh's physical capabilities. (Tr. 20, 507). The biggest factor supporting disability, according to Urban, was related to McIntosh's mental impairments—being off tasks more than 25% of the time and having many "bad days" over the course of a month. (Tr. 508). However, the ALJ disregarded

---

[1] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

5

these particular opinions because they "lack[ed] support in the medical records"—in other words, Urban's MSS drew bald conclusions without corroborative support elsewhere in the record. (Tr. 22). Overall, the ALJ found that while McIntosh does suffer from several medical conditions none were independently or cumulatively disabling. (Tr. 23).

Having made an RFC determination, the ALJ continued on through Step Four to determine whether McIntosh could perform her past relevant work in light of her designated RFC. The ALJ determined McIntosh is unable to perform any past relevant work. (Tr. 23).

At Step Five, the ALJ analyzed whether McIntosh can successfully adjust to other work. The ALJ noted that if McIntosh could perform all or substantially all of the exertional demands at a given level under the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, then the Grids would direct a conclusion of whether McIntosh was "disabled" or "not disabled." The ALJ acknowledged, however, that additional limitations impede McIntosh's ability to perform work at all or substantially all of the assigned level. Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode McIntosh's occupational base to perform "sedentary work." The VE testified McIntosh could perform work as an assembler, document preparer, and toy stuffer even after considering all of the limitations in McIntosh's RFC. (Tr. 24). The ALJ then found these jobs exist in significant numbers in the national economy and concluded McIntosh is not disabled. (Tr. 25).

**IV.   Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**V.   Discussion**

McIntosh seeks remand on two issues. First, she says the ALJ failed to fully develop the record regarding her "possible fibromyalgia" and that this condition, if verified, would have further eroded her ability to work such that she'd have been found disabled. Second, McIntosh says the ALJ correctly gave "significant weight" to the opinions of her doctor, Anjani Urban, but failed to incorporate all of the functional limitations he found in favor of—specifically his opinions about McIntosh's inability to stay on task and avoid workplace absences.

7

**A. The ALJ Did Not Err in Disregarding McIntosh's "Possible Fibromyalgia"**

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017). But this responsibility "is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). On balance, the ALJ is only "required to order [further] test[ing] if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disable." *Id*.

McIntosh says she "sufficiently raised the question of her fibromyalgia to obligate the ALJ to investigate it further." In support, she points out that she "alleged fibromyalgia as one of [her] medical conditions … [in] her application for benefits." She also highlights how "[m]uch of her functional report was dedicated to reporting the difficulties that her chronic pain and fatigue cause[s] her"—pain she says she feels "every day."

Be that as it may, the medical records are less convincing. McIntosh's treating physician, Dr. Urban, has followed McIntosh's health conditions since at least November 2013. (Tr. 542-552). Since that time, Urban has periodically "wonder[ed] if [McIntosh] has fibromyalgia" but has never diagnosed it. (Tr. 300, 332, 343). Other doctors passingly reference fibromyalgia, either as self-reported by McIntosh or through their own diagnostic suspicion, but—as she admits herself—McIntosh has never seen a provider who "performed the required testing to establish a medically determinable impairment [of fibromyalgia]." (Tr. 599, 674). In fact, in 2018 McIntosh failed to complete an eight-week course designed to treat her suspected fibromyalgia—the provider noted that

8

McIntosh was a "no show" one week into the plan and was "discharged due to non-compliance." (Tr. 677-683).

Instead, much of McIntosh's daily "pain and fatigue" can be attributed to other conditions. Urban, for example, treated pain-inducing conditions such as costochondritis, pleurisy, possible lyme disease, restless leg syndrome, and chronic anxiety. (Tr. 332, 338-340, 345, 546, 548). Other doctors, likewise, treated unrelated pain-inducing conditions including painful "abdominal bloating" secondary to lactose intolerance and soy allergies and suspected endometriosis. (Tr. 518-519, 561, 565, 586, 592-593). It is also notable that there are large swathes of time—particularly in 2015 and 2016—where the sort of widespread, diffuse pain typically associated with fibromyalgia isn't mentioned at all; rather, providers were treating localized or situational conditions such as those referenced above. (Tr. 334-342, 346). It is true that Urban wrote "fibromyalgia" under diagnoses in his medical source statement in March 2017. (Tr. 506). However, such a terse reference—by itself—is conclusory and nothing in the longitudinal records support more than a passing suspicion of fibromyalgia. *See Meyer v. Berryhill*, 2019 WL 1429335 at *5 (E.D. Mo. Mar. 29, 2019) (conclusory medical source statements are appropriately discounted where inconsistent with the record as a whole).

The fact is, McIntosh's passing reference to her "chronic pain and fatigue" can be attributed to any number of conditions; but, labeling them one thing versus another makes no real difference. Taken as a whole, "there is no doubt that [McIntosh] is experiencing pain; the real issue is how severe that pain is"—whatever its medical attribution. *Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999). Thus, even assuming for sake of argument

9

that McIntosh has diagnosable fibromyalgia, it is telling that Urban—McIntosh's long-time provider—believed she could perform a number of physical activities notwithstanding its presence. (Tr. 507). The ALJ needed no additional information to properly evaluate the effect of McIntosh's fibromyalgia-like conditions and, thus, was not required to further develop the record. *See McCoy*, 648 F.3d at 612 (ALJ not required to further develop the record where there was sufficient evidence to determine the effects of claimant's medical condition).

### B. The ALJ Did Not Err in Discounting Certain Opinions of McIntosh's Treating Physician

An ALJ may assigned limited weight to "a treating physician's opinion when it is either internally inconsistent or conclusory." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). Opinions that consists of checklists or fill-in-the-blank statements, which "cite no medical evidence" in support and "provide[] little to no elaboration," are properly disregarded as conclusory. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

Here, McIntosh disagrees with the decision of the ALJ to disregard Urban's opinions as they relate to her inability to stay on task, avoid workplace absences, and engage socially with coworkers and the public. The ALJ gave credit to Urban's conclusions that McIntosh has "moderate limitations in the areas of adaptation, social interaction, and sustained concentration" and, thus, limited her to "simple, routine, and repetitive tasks" in a "low-stress job" with no public interaction and only occasional interaction with coworkers. (Tr. 20). But, the ALJ disregarded Urban's conclusions

10

regarding McIntosh's ability to stay on task and maintain good attendance, finding they "lack support in the medical records." (Tr. 22).

Foremost, and to the extent McIntosh argues otherwise, the ALJ did not err in fashioning an RFC that took into account McIntosh's "moderate limitations" without using the precise language of Urban's MSS. "There is no requirement that an RFC finding be supported a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). And, as such, there is no requirement that an ALJ directly incorporate the precise limitations found by a medical provider. *See Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016) (RFC limiting claimant to "simple, repetitive, and routine tasks" who also "cannot pay close attention to detail or use independent judgment" sufficiently captured doctors' observations about claimant's slowpace). A comparison of the RFC and Urban's MSS opinions show the ALJ largely agreed with Urban and incorporated those mental conditions McIntosh suffers that affect her work-related capabilities. (Tr. 20, 510).

The ALJ also did not err in disregarding Urban's conclusions specific to McIntosh's ability to stay on task and maintain good attendance—nowhere in the record are those limitations supported. To the contrary, McIntosh admits she's capable of handling "changes in routine" and while her ability to pay attention "varies," she can "finish what [she] start[s]." (Tr. 214-218). She is also able to paint and play video games (a lot of video games according to McIntosh), which requires at least some ability to focusing on a given task. *See Hewitt v. Colvin*, 2015 WL 1286309 at *11 (E.D. Mo. Mar. 20, 2015); *Robertson v. Astrue*, 2013 WL 353088 (W.D. Mo. Jan. 29, 2013). As far as attendance is concerned, it is unclear exactly *why* McIntosh would struggle to be

11

present—she managed to make it to the majority of her doctor appointments, regularly cares for her young son, and apparently is capable of doing various daily activities without disruption. (Tr. 213-214). The conclusory (and unsupported) nature of this limitation is apparent when a review of the record reveals no clearly-established, longitudinal trend to support it. Therefore, the ALJ did not err in rejecting Urban's opinions on these points. *See Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019) (ALJ did not err in disregarding physician's opinions as conclusory where a review of the record failed to identify corroborative support).

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017). Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** and plaintiff Vanessa McIntosh's complaint (ECF #1) is **DISMISSED with prejudice**. A separate judgment accompanies this Order.

So ordered this 22 day of May 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

12